UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Robert T. and | ) | Bk. No. 10-73842 |
| | ) | Chapter 13 |
| Angela M. Baumgardner, | ) | |
| | ) | |
| *and* | ) | |
| | ) | |
| Willard and Darla Jones, | ) | Bk. No. 11-70874 |
| | ) | Chapter 13 |
| Debtors. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE AVAILABILITY OF THE "OLD-CAR" DEDUCTION**

This Court should allow the Debtors to deduct a $200 monthly expense on Form B22C in the form of the "old car" or "tired iron" operating expense for vehicles six years of age or older, or with in excess of 75,000 miles. Such an allowance would give effect to the spirit of the recent Ransom decision and would help achieve uniform treatment of debtors.

This conclusion is supported by the recent *Ransom* decision. *See Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716 (2011). In that case, the issue revolved around whether a debtor could claim an ownership expense on the means test for a vehicle unencumbered by a loan. *Id.* at 723. The debtor's plan in that case was denied by the bankruptcy court, and the denial was subsequently affirmed by the district court, bankruptcy appellate panel, and Supreme Court, because the debtor improperly claimed an ownership expense for a vehicle on which he was not making loan payments. *Id.*

In reaching its conclusion, the Supreme Court described the interaction between the IRS National and Local Standards, Other Necessary Expenses, and Collection Financial Standards,

all of which are found in the Internal Revenue Manual. *Id.* at 723-26. The National and Local Standards are tables of figures, created by the Internal Revenue Service, corresponding to deductions which may be taken on the means test. The Court noted that the Collection Financial Standards, "which describe how to use the tables and what the amounts listed in them mean," are "supplemental guidelines." *Id.* While the Court agreed with our own Circuit in *Ross-Tousey* that the Bankruptcy Code does not specifically incorporate the Collection Financial Standards into the Code, the Standards may be consulted by courts "in interpreting the National and Local Standards" because that is the purpose of that information. *Id.* at 10; *In re Ross-Tousey*, 549 F.3d 1148 (7th Cir. 2008). While not controlling, the Collection Financial Standards are useful because the agency [which creates and revises the standards] "might have something insightful and persuasive to say about [the National and Local Standards.]" *Ransom* at 726, n.7. In accordance with the Supreme Court's approval of the use of the Collection Financial Standards, this Court should allow the Debtors the "old-car" deduction in the relevant line of the means test.

The Ninth Circuit, in its opinion in the *Ransom* case, specifically stated that debtors with older, lien-free vehicles are entitled to take the additional $200 operating expense. *Ransom v. MBNA*, 577 F.3d 1026 (9th Cir. 2009); *see also In re Carlin*, 348 B.R. 795 (Bankr. D. Or. 2006). The Supreme Court did not decide this particular issue, but the Supreme Court's approval of the use of the Collection Financial Standards to interpret the Local and National Standards would seem to indicate that the Supreme Court would be likely to agree with the Ninth Circuit, and allow the extra operating cost. The Supreme Court did not negate the lower court's ruling that the additional expense is available, though the Court could easily have done so in its opinion.

The core of the *Ransom* dispute was whether a debtor could deduct an ownership expense for a vehicle which the debtor owned free and clear of any liens. Several Circuits ruled that

taking the deduction was acceptable, while other Circuits decided the opposite. The Internal Revenue Service's Collection Financial Standards provided that an allowance for ownership expense, without actually having a vehicle loan payment, was not appropriate. The Supreme Court ultimately agreed, stating that "the Collection Financial Standards' treatment of the car-ownership deduction reinforces our conclusion" that a debtor must be making loan payments to qualify for the car ownership expense deduction. *Ransom*, 131 S.Ct. at 726. While the Collection Financial Standards may not be absolutely controlling, they are persuasive. Given the Internal Revenue Service's function of collecting past-due taxes from delinquent taxpayers, such Standards, which are informative as to what circumstances may be considered by IRS collectors should be considered by this Court in determining a debtor's ability to pay. *See In re Johnson*, 2011 Bankr. LEXIS 2518 (M.D. Fla. July 8, 2011), for a summary of various courts' analyses of the issue.

This Court is likely aware that Judge Perkins ruled on this issue earlier this year in *In re VanDyke*, 2011 Bankr. LEXIS 1798 (Bankr. C.D. Ill. 2011).[1] In that case, the over-median debtor owned two vehicles: a newer car subject to a lien, and "an unencumbered 1994 Chevrolet Beretta with 145,000 miles, valued at $300." *VanDyke,* 2011 Bankr. LEXIS 1798 at *2. The old Beretta did not run.[2] *Id.* In support of his claim to the "old-car" deduction, the debtor in that case relied principally on the Statement of the U.S. Trustee Program's Position on Legal Issues Arising Under the Chapter 13 Disposable Income Test (referred to hereafter as the "UST Program's Position"), "which implements certain of the IRS guidelines for determining a taxpayer's allowable expenses." *Id*. The UST Program Position stated that debtors may take the

---

[1] The *VanDyke* ruling is not binding upon this Court. *See, e.g., In re Lane*, No. 08-73187 (Bankr. C.D. Ill. Jan. 12, 2010).

[2] The *VanDyke* case is distinguishable from those before this Court because the *VanDyke* debtor claimed two vehicles, one of which did not run and therefore was not operable (and, as a matter of common sense, did not merit an additional "operating expense.").

old-car allowance, for owning vehicles over six years old or with more than 75,000 miles, if those debtors are located in any but the Fifth, Seventh, and Eighth Circuits. *Id.*

In the *VanDyke* ruling, that Court dismissed that debtor's over-reliance on the UST Program's Position, and the Debtors agree with that conclusion. *Id.* at 8. The UST Program Statement may be informational, as the *VanDyke* court noted, but is certainly not controlling upon this Court. However, the UST Program Statement insists that debtors in our Circuit, and the Fifth and Eighth[3] Circuits, may not avail themselves of the old-car deduction, while debtors in the remaining circuits may take the old-car deduction. While the UST Program Statement was last updated before the *Ransom* decision was reached by our highest Court, it appears that the discrepancy may be due to several circuits allowing debtors to take ownership deductions for unencumbered vehicles while other circuits did not allow that. Now that *Ransom* has clarified the issue of the ownership expense for unencumbered vehicles, there is no reason to discriminate between circuits.

Debtors are entitled, just as anyone else, to uniform and equal application of our nation's laws. U.S. Const., 14th Amend. The UST Program Position discriminates between debtors based on their location within certain judicial circuits. The UST Program Position, presumably guiding trustees to allow the old-car deduction when debtors are located within certain circuits' jurisdiction, discriminates against debtors located in certain target circuits, including our own. Presumably, Congress enacted the Bankruptcy Code, and its amendments, to be uniformly applicable to debtors regardless of their location, while the UST Program Position favors debtors in certain regions over others. While the UST Program Position may have had a rational basis because certain Circuits allowed unencumbered ownership costs, while other Circuits disallowed

---

[3] *In re Wilson*, 383 B.R. 729 (B.A.P. 8th 2008), specifically states that debtors may claim the old-car deduction. This is despite the UST Program Position's contrary assertion.

those costs, post-*Ransom*, that consideration is invalid. Therefore, the Debtors believe the UST Program Position, and the practices of the U.S. Trustee's office in this regard, to be an unconstitutional violation of the Debtors' rights to equal protection. As trustees are affiliated with the U.S. Department of Justice by virtue of U.S. Trustees' appointment by the Attorney General, 28 U.S.C. 581, 586, their actions should be considered to be state actions for the purpose of the constitutionality of those actions. As the UST Program Position favors certain debtors over others similarly situated, based solely on location of residence, that position is untenable. Accordingly, the Debtors believe the UST Program Position, insofar as it is instructive or binding on, or inviting action of, the U.S. Trustees, Chapter 13 Trustees, and Chapter 7 Trustees, is unconstitutional as an unlawful discrimination between debtors based solely on geography.

The Constitution empowers Congress to enact *uniform* laws providing bankruptcy relief. U.S. Const., Art. I, Sect. 8, cl.4 (emphasis supplied). Bankruptcy is a process designed to provide debtors with a "fresh start" via relief from their debts. Countless courts have noted this purpose of the Bankruptcy Code, and the former Bankruptcy Act. After the 2005 bankruptcy reforms enacted by Congress, arguably favoring creditors, some would say that the purpose of bankruptcy, particularly chapter 13 bankruptcy, is to ensure that debtors pay creditors as much as possible, forgetting that the core purpose of bankruptcy is to provide a fresh start to debtors, and to ensure that such debtors pay their creditors what they can afford – not more and not less. While a nationwide mathematical system of determining what debtors can or cannot afford to pay probably will never be precise in every instance, allowing debtors with old cars to deduct the $200 per month operating expense for those vehicles will ensure that those debtors are paying creditors what they can truly afford in light of their actual circumstances.

In conclusion, disparate treatment of debtors based only on geographic location, as the U.S. Trustee's office may have done, is an unconstitutional denial of those debtors' rights to equal protection. In addition, the Supreme Court, in the *Ransom* decision, explicitly authorized bankruptcy courts to employ the Internal Revenue Service's Collection Standards, which include reference to the old-car deduction. Accordingly, the Debtors respectfully ask this Court to find that the Debtors, and others similarly situated, may avail themselves of the $200 "old-car" deduction.

                                                    Respectfully submitted on behalf of the Debtors,

                                                    <u>/s/ Brian D. Pondenis</u>
                                                    Brian D. Pondenis
                                                    Illinois Bar # 6291212
                                                    Indiana Bar # 28882-83
                                                    Iowa Bar # AT00100768

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum was served upon the following persons, via CM/ECF, on August 16, 2011:

Mr. John Germeraad, Chapter 13 Trustee

United States Trustee, Peoria, Illinois

                                                              /s/ Brian D. Pondenis

Dated: August 16, 2011

                                                              Brian D. Pondenis


Ostling & Associates, Ltd.
201 W. Olive St.
Bloomington, IL 61701
(309) 827-3030